# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

WGM PARTNERS, LLC,

Plaintiff,

vs.

LIMA ONE CAPITAL, LLC,

Defendant.

Civil Action File No.

_____

## VERIFIED COMPLAINT AND JURY TRIAL DEMAND

### I. THE HOME / SUBJECT PROPERTY

1.

Relief is sought in this action with respect to the below-described parcel of

real estate located in Fulton County, Georgia (the "Subject Property") which

is described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING
IN LAND LOT 1233 OF THE 2ND DISTRICT, 1ST SECTION,
FULTON COUNTY, GEORGIA, BEING LOT 18, BLOCK A,
WINDWARD PROPERTIES, INC., CLIPPER BAY V, PHASE 1,
AS PER PLAT RECORDED IN PLAT BOOK 162, PAGE 60,
FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS
INCORPORATED HEREIN AND MADE A PART HEREOF BY
REFERENCE. MORE COMMONLY KNOWN AS: **645
AMERICAS CUP COVE, ALPHARETTA, GA 30005**. TPID:
21-5712-1233-011-8.

-1-



2.

The Subject Property has a fair market value, net of encumbrances (i.e., "net equity") of no less than $300,000.

## II. THE PARTIES

### *Plaintiff WGM Partners LLC*

3.

Plaintiff WGM Partners LLC ("WGM") was and is a limited liability company formed and existing under the laws of the State of Florida.

4.

WGM's sole member is one Edwin Jean-Pierre, who resides in Fulton County, Georgia, and is a citizen of the State of Georgia.

5.

Because WGM's only member is a citizen of the State of Georgia, WGM is deemed a citizen of Georgia for the purpose of determining diversity jurisdiction.



*Defendant Lima One Capital, LLC*

6.

Lima One Capital, LLC ("Lima") was and is a limited liability company formed and existing under the laws of the State of South Carolina.

7.

On information and belief, Lima is a wholly owned subsidiary of MFA Financial, Inc., a New York corporation; accordingly, Lima is deemed to be a citizen of the State of New York for the purpose of determining diversity jurisdiction.

8.

Lima may be served in care of its registered agent, Northwest Registered Agent Service, Inc., 300 Colonial Center Parkway, Ste. 100N, Roswell, Fulton County, Georgia 30076.

## III. JURISDICTION AND VENUE

9.

The Court's jurisdiction is invoked under 28 U.S.C. §1332(a) in that the amount in controversy exceeds $75,000 — exclusive of interest and costs —

-3-



and there exists complete diversity among the parties.

10.

This Court's exercise of personal jurisdiction would not violate the Due

Process Clause of the Fourteenth Amendment to the United States

Constitution because this cause of action "arise[s] out of or relate[s] to"

Lima's contacts with Georgia;[1] Lima purposefully availed itself of the

benefits of Georgia, and therefore can be said to have reasonably anticipated

being haled into Georgia;[2] and, granting jurisdiction comports with "fair play

and substantial justice."[3]

11.

Venue is proper in the Northern District of Georgia, Atlanta Division,

under 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial

part of the events or omissions giving rise to the claims occurred.

---

[1] *E.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[2] *Burger King Corp.*, 471 U.S. at 472.

[3] *Id.*

-4-

## IV. FACTUAL ALLEGATIONS

*January 2020: WGM acquires the Subject Property*

12.

On or about January 30, 2020, WGM purchased and acquired fee simple title to the Subject Property via a Special Warranty Deed.

13.

The Special Warranty Deed was recorded on March 27, 2020, and indexed at Deed Book 61367, Page 553 of the Fulton County real estate records.

*March 2020: WGM contracts with Lima*

14.

On or about March 12, 2020, WGM contracted with Lima to extend to WGM a commercial line of credit of up to $562,498.86 (the "Loan" or the "Loan Agreement").

15.

The purpose of the Loan Agreement was to finance acquisition and improvements costs for the Subject Property.



16.

The Loan Agreement was evidenced by a document that was captioned "Loan Agreement."

17.

The terms of the Loan Agreement called for Lima to disburse to WGM $335,523 from the line of credit upon closing, and up to $226,975 for subsequent draws.

18.

The Loan Agreement incorporated by reference an instrument captioned "Commercial Non-Revolving Line of Credit Promissory Note" (the "Note").

19.

Interest on the Note was to accrue at a rate of 9.5% per annum on the funds advanced by Lima.

20.

The Note evidences a line of credit whose balance varies, depending on the extent to which the line of credit is used.



21.

The Note does not represent "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order...." as contemplated by O.C.G.A. § 11-3-104(a).

22.

The Note is not a negotiable instrument under the UCC.

23.

The Note requires payments of interest to be made "in arrears"

24.

The Note requires "the entire principal amount," together with outstanding accrued interest and with all other sums due hereunder" to be payable in full by the "Maturity Date" of May 1, 2021.

25.

The Note (¶ 1.e.) states that "[a]ll payments received will be credited first to any costs, fees or charges hereunder, then to interest accrued at the applicable interest rate as set forth herein, with the balance on account of principal."



26.

The Note authorizes the prepayment of "all or any portion of the unpaid principal balance… at any time without penalty." (¶ 7)

*The Security Deed*

27.

As security for the Loan, WGM, as grantor, conveyed legal title to the Subject Property to Lima via a Deed to Secure Debt (the "Security Deed").

28.

The Security Deed was recorded on March 27, 2020, and indexed at Deed Book 61367, Page 559 of the Fulton County real estate records.

29.

The Security Deed purports to convey to Lima a "power of sale" which authorizes it to auction the Subject Property on the courthouse steps in the event of an uncured breach (the "Power of Sale").

*WGM Performs under the Loan Agreement*

30.

From May of 2020 through April of 2022 WGM made installment payments to Lima that were sufficient to satisfy both accrued interest and

-8-



portions of the principal balance.

31.

The payments of principal totaled approximately $4,278.53.

32.

Lima accepted the interest and principal installment payments without protest.

33.

From May of 2020 through April of 2022, WGM also made various payments to Lima to satisfy various loan charges.

34.

For example, in August 2021, WGM made a $4,610.75 payment in consideration for extending the term of the loan.

35.

Lima accepted the loan-charge payments without protest.

36.

The parties agreed to mutually extend the due dates of the Loan installment payments.



37.

In January of 2022, Lima agreed to extend the maturity date of the loan in consideration for an additional extension fee that, WGM later determined, exceeded by $1,765.37 the extension fee stipulated in the Loan Agreement.

38.

WGM paid, and Lima accepted, a contractually stipulated extension fee which, under the Note, should have extended the maturity date by an additional three-month period from January of 2022 to April of 2022.

*May 2022: Lima accelerates the Loan*

39.

On or about May 17, 2022, Lima, through its law firm, Rubin Lublin, LLC ("Rubin Lublin"), transmitted to WGM a letter captioned "Notice of Acceleration and Foreclosure" (the "Notice").

40.

The Notice represented the commencement of the exercise of the Power of Sale ( ¶ 34 *supra*) via a nonjudicial foreclosure auction.

-10-



41.

The Notice advised WGM of Lima's intention to auction the Subject

Property on the Fulton County courthouse steps on July 5, 2022.

*June 2022: WGM attempts to satisfy the Loan*
*to avert a non-judicial foreclosure auction*

42.

On or about June 2, 2022, WGM, through its agent and manager, Edwin

Jean-Pierre, requested a payoff quote from Lima in order to satisfy the Loan,

and to avoid the loss of the substantial equity in the Subject Property.

43.

The payoff quote that Lima transmitted shortly thereafter to Jean-Pierre

(the "Payoff") totaled **$537,249.34**; but the quote was vaguely itemized.

44.

The Payoff appeared to Jean-Pierre to be grossly inaccurate.

45.

Jean-Pierre, responded to Lima's Payoff quote by advising in an email that

"there is a huge discrepancy in the loan balance and payoff amount,

particularly $19k & 32k. I have requested itemizations from your attorneys

-11-



who have referred me back to you."

46.

Jean-Pierre further advised that he intended to refinance the Loan within the next two weeks; however, "these numbers simply do not work and must be amended for this all to work."

47.

On June 8, 2022, Lima's Notice of Sale under Power was first published in the *Fulton County Daily Report* — advertising a foreclosure sale date of July 5, 2022.

48.

On June 15, 2022, Lima's second Notice of Sale under Power — advertising a foreclosure sale date of July 5, 2022 — was published.

*June 20, 2022: Lima demands a payoff figure*
*that is not authorized under the Loan Agreement.*

49.

On or about June 20, 2022, Lima transmitted to WGM (in care of Jean-Pierre) an email with a more detailed itemization of the Loan-payoff calculations.

-12-



50.

The itemizations so transmitted confirmed WGM's conclusion that the

Payoff quote was grossly inaccurate — as detailed in the following ¶¶ 51–56.

51.

The Payoff quote included unjustified and unsubstantiated loan charges of

$32,468 — an amount that exceeded by $13,474.86 what Lima was authorized

to charge according to the Loan Agreement.

52.

The loan charges identified in the Payoff quote were inaccurate because

they did not reflect a credit for $4,610.74 that WGM had paid in August of

2021. (See ¶ 34, *supra*.)

53.

The Payoff quote included $920.95 of new late charge fees that Lima had

never before asserted or charged.

54.

The Payoff quote included a $2,200 "foreclosure fee" that was neither

itemized nor justified.

-13-



55.

The Payoff quote demonstrated that Lima had failed to apply WGM's
principal payments to the unpaid principal balance; thus the Payoff failed to
reflect that WGM had paid down outstanding principal by $4,278.53. (See
¶ 31, *supra*.)

56.

The Payoff quote's inaccuracy is summarized in the following table
comparing WGM's calculations to those of Lima, and showing a discrepancy
("Δ") in excess of $15,000.

|  | WGM | Lima | Δ |
|---|---|---|---|
| UPB | $ 485,295.33 | $ 489,573.86 | $ 4,278.53 |
| Accrued Interest | $ 22,376.25 | $ 19,691.99 | $ (2,684.26) |
| Accr. Late Charge | $ 0.00 | $ 920.95 | $ (920.95) |
| FC Fee | $ 0.00 | $ 2,200.52 | $ (2,200.52) |
| Loan Charge | $ 18,993.14 | $ 32,468.00 | $ (13,474.86) |
| Escrow Bal. | $ (7,605.98) | $ (7,605.98) | $ 0.00 |
| Grand Total | $ 519,058.74 | $ 537,249.34 | $ (15,002.06) |

57.

On June 22, 2022, Lima's third Notice of Sale under Power — advertising
a foreclosure sale date of July 5, 2022 — was published.

-14-



58.

On June 27, 2022, WGM, through counsel, transmitted to Rubin Lublin a

letter advising that "[y]our having commenced the foreclosure sale is

wrongful due to the material miscalculation of the amounts owed on the

referenced loan."

59.

In the June 27th letter WGM's counsel demonstrated the inaccuracy of

Lima's loan calculations.

60.

In the June 27th letter WGM's counsel advised Rubin Lublin of their

client's legal duty when exercising the power of sale in a security deed:

> As you know, the power of sale is designed to facilitate the
> collection of a debt secured on real estate. However, that power must
> still be "conducted in good faith," and it must be "exercised fairly."
> See *Brown v. Freedman*, 222 Ga. App. 213, 215 (1996) (quoting
> O.C.G.A. § 23-2-114, *Kennedy v. Gwinnett Commercial Bank*, 155
> Ga. App. 327, 330 (1980)).
>
> The duty of good faith and fair dealing implied in a security deed
> and its power of sale requires the parties to the loan agreement "to
> perform their promises and provide such cooperation as is required
> for the other party's performance." *Brown*, 222 Ga. App. at 216
> (citations omitted). A lender's improper posting of payments to their
> borrower's account can represent a breach of their duty of good



faith. So, too, can the lender's interference with their borrower's efforts to redeem the collateral. *Id.*

61.

In the June 27th letter WGM's counsel further advised Rubin Lublin that "[o]ne of the more significant issues we see is that your client failed to apply overpayments of interest to the reduction of the principal figure," as required under paragraph 1.e. of the Note.

62.

In the June 27th letter WGM's counsel further advised Rubin Lublin that the mystery "loan charges" of approximately $13,474 lacked itemization or explanation.

63.

In the June 27th letter WGM's counsel further advised Rubin Lublin that

> Our client is attempting to pay off the loan by refinancing with another lender. Your client's improper posting of payments, its mystery charges, and its failure to quote an accurate payoff figure represents an interference with our client's efforts to redeem their collateral.
>
> Your advertising of the July 5, 2022 foreclosure on the basis of materially inaccurate loan calculations already represents the commencement of a wrongful foreclosure auction.

-16-



We would also request that you immediately cancel the July 5th auction by transmitting to this office, in writing, a letter or memo confirming that you will terminate it by suspending any further advertisements and by declaring your intention to not conduct the July 5th auction.

64.

On June 28, 2022, Rubin Lublin responded to WGM's counsel's June 27th letter by transmitting an email setting out its client's "Itemization of Loan Charges" (the "Itemization").

65.

The Itemization failed to adequately respond to the mysterious loan charges identified in ¶¶ 51–56, supra, and failed entirely to address Lima's miscalculation of the unpaid principal balance.

66.

On June 29, 2022, Lima's fourth Notice of Sale under Power — advertising a foreclosure sale date of July 5, 2022 — was published.

67.

WGM has financing arranged to satisfy the correctly calculated balance due on the Loan.

-17-



68.

WGM is prepared to close on the refinance and to satisfy the Loan within two weeks or less.

69.

Lima has failed and refused to adjust its calculations, or to suspend the foreclosure auction scheduled for Tuesday, July 5, 2022.

70.

Lima's failure to quote an accurate payoff is interfering with WGM's efforts to satisfy the Loan.

71.

All conditions precedent have occurred or been performed.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM (Breach of Contract)

72.

The allegations in ¶¶ 12–71 are incorporated herein.

73.

Lima breached contractual duties owed to WGM in at least the following ways.

-18-



*Unauthorized Loan Charges*

74.

The charges added to the Loan balance by Lima, as outlined in ¶¶ 51–56, are simply not authorized under the Loan Agreement.

75.

By conditioning the satisfaction of the Loan on a payment that is not authorized under the loan documents or the parties' course of performance, Lima is in breach of the Loan Agreement.

*Breach of implied duty of good faith performance*

76.

Georgia law provides that every contract is accompanied by an implied duty of good faith and fair dealing in performance and enforcement thereof.[4]

77.

Lima's actions evidence a lack of good faith in its performance and enforcement of the Loan Agreement.[5]

---

[4] See *Brown v. Freedman*, 222 Ga. App. 213 (1996)(affirming denial of summary judgment to foreclosing lender on borrower's count for breach of implied duty of good faith and fair dealing accompanying every contract).

[5] *Brown v. Freedman*, 222 Ga. App. 213 (1996).



78.

Lima breached the implied duty of good faith and fair dealing that it owed to WGM.

79.

WGM is entitled to an award of damages for lost equity, rescission of the auction, and to general and special damages in an amount no less than $300,000 for lost equity, and otherwise according to proof, due to breach of contract.

## SECOND CLAIM (Wrongful Foreclosure)

80.

The allegations in ¶¶ 12–79 are incorporated herein.

81.

Georgia law, codified at O.C.G.A. § 23-2-114, requires "[p]owers of sale in deeds of trust, mortgages, and other [ ] instruments be strictly construed and [ ] be fairly exercised."[6]

---

[6] Although there is a technical difference between the concepts of "deed of trust" or "mortgage" and "security deed" these terms have been declared to be effectively interchangeable in this context. See, e.g., *U.S. Bank v. Gordon*, 289 Ga. 12, 14 (2011) ("[T]his court has treated deeds to secure debts... as equitable mortgages.")



82.

Breach of the requirement of fairly exercising the power of sale represents

an actionable breach of duty: "[t]here exists a statutory duty upon a [mortgage

lender] to exercise [the power of sale] fairly and in good faith…. Although

arising from a contractual right, breach of this duty is a tort [, i.e., "wrongful

foreclosure,"] compensable at law."[7]

83.

A mortgage lender also breaches this duty if, in foreclosing, it violates

terms of the parties' loan agreement.[8]

84.

A claim for wrongful foreclosure gives the aggrieved debtor alternative

legal remedies of (a) cancellation of the foreclosure sale and recovery of

damages not associated with the value of the property, or (b) damages for the

---

[7] *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994); see *Stewart v. SunTrust Mortgage*, 331 Ga. App. 635, 638 (2015)(breach of the servicer's duty of loyalty and good faith in servicer's capacity as borrower's attorney-in-fact also gives rise to wrongful foreclosure).

[8] See *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374 (2004).

-21-



loss of the equity in the unlawfully-foreclosed property.[9]

85.

"It is not necessary that [a] foreclosure be completed to bring an action for wrongful foreclosure." The fact that the creditor "initiated foreclosure proceedings by advertising the properties for sale is sufficient to support a claim for wrongful foreclosure."[10]

86.

WGM is entitled to an award of damages for lost equity, rescission of the auction, and to general and special damages in an amount no less than $300,000 for lost equity, and otherwise according to proof, due to wrongful foreclosure.

---

[9] *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285 (1994) (reconsideration denied June 24, 1994), *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 556 n.1 (2008), *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (1980) (alternative remedies for wrongful foreclosure).

[10] *Sears Mortgage Corp. v. Leeds Bldg. Products*, 219 Ga. App. 349, 350 (1995), aff'd in part, rev'd in part, 267 Ga. 300 (1996), and vacated in part, 225 Ga. App. 806 (1997), citing *Sale City v. Planters & Citizens Bank*, 107 Ga. App. 463 (1963).



## THIRD CLAIM (Equitable Accounting)

### 87.

The allegations in ¶¶ 12–71 are incorporated herein.

### 88.

This case presents issues regarding "matters of account" related to complicated and intricate accounting procedures.

### 89.

WGM is entitled to an equitable accounting for all funds it has paid to Lima.

### 90.

WGM entitled to an equitable accounting for all traceable proceeds of any sale, encumbrance, or transfer of any interest in the Subject Property.

## FOURTH CLAIM (Litigation Expenses Under O.C.G.A. § 13-6-11)

### 91.

The allegations in ¶¶ 12 – 90 are incorporated herein.



92.

WGM has incurred and will continue to incur attorney's fees and other

expenses of litigation to prosecute the state-law claims asserted in this action.

93.

Lima's actions have demonstrated bad faith, have no legal justification,

and have caused WGM unnecessary delay and expense.

94.

WGM is entitled to recover all costs of the prosecution of this action,

including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11.

## FIFTH CLAIM (Prejudgment Interest)

95.

The allegations in ¶¶ 12–79 are incorporated herein.

96.

To the extent that any recovery under a theory of breach of contract is

sustained by the Court or the finder of fact, and that it is determined that an

amount ascertained represents the damages at the time of the breach of

contract by Lima, WGM requests the addition of legal interest from the time



of the breach until recovery in accordance with O.C.G.A. § 13-6-13 and other

applicable law.

### SIXTH CLAIM (Nominal Damages)

97.

The allegations in ¶¶ 12 – 96 are incorporated herein.

98.

"The law infers some damage from the invasion of a property right and if

no evidence is given of any particular amount of loss, declares the right by

awarding what it terms nominal damages."[11]

99.

With respect to WGM's claims for breach of contract and wrongful

foreclosure, if WGM is able only to prove a less than substantial measure of

actual damages, or its damages are not susceptible of reasonable certainty of

proof as to their extent, WGM is entitled to recover nominal damages in

vindication of its having brought this action "upon a good cause."

---

[11] See *Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 100
(2007) (quoting *Callahan v. Panfel*, 195 Ga. App. 891, 893 (1990)).



100.

WGM is entitled to an award of nominal damages according to the circumstances of this case.

## NOTICE OF INTENT TO RECORD LIS PENDENS

101.

WGM hereby notifies all concerned that its is undertaking to record a Notice of Lis Pendens regarding the Subject Property in the Lis Pendens Docket of the real estate records of the Clerk of Fulton County Superior Court.

## VI. DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff WGM Partners LLC requests judgment from this Court according to the relief sought, including:

(a)     **On the first Claim for Breach of Contract**: a decree that rescinds the foreclosure sale, de-accelerates the Loan, cancels any instrument conveying an interest in the Subject Property, including, by way of example, any Deed Under Power, or special damages for lost equity, and consequential damages according to proof;

-26-



(b)     **On the second Claim for Wrongful Foreclosure**: an order

rescinding and setting aside the foreclosure sale, including the

cancellation of any Foreclosure Deed or Deed Under Power, and any

subsequently-recorded muniment of title, and an appropriate award

of damages related to the consequences of the foreclosure;

(c)     **On the third Claim for Equitable Accounting**: that this Court

declare that WGM is entitled to an equitable accounting for all funds

paid to Lima and for all funds and traceable proceeds of any sale,

rental, encumbrance, or transfer of any interest in the Subject

Property;

(d)     **On the fourth Claim for Litigation Expenses**: an award of

attorney's fees and expenses of litigation pursuant to O.C.G.A. §

13-6-11

(e)     **On the fifth Claim for Prejudgment Interest**: an award of

prejudgment interest calculated as of the time of the breach of

contract by Lima, until recovery in accordance with

O.C.G.A. § 13-6-13;

(f)     **On the sixth Claim for Nominal Damages**: an award of nominal

damages in an amount to be determined by the enlightened

-27-



conscience of an impartial fact-finder;

(g)     For all costs;

(h)     For **Trial by Jury** on any issue so triable; and,

(i)     For such other and further relief as the Court may deem equitable

and just in the premises.

Respectfully submitted this 30th day of __June__ , 2022.

315 W. Ponce de Leon Ave.            RICHARD S. ALEMBIK, PC
Ste. 250
Decatur, GA 30030-5100               By: /s/ Richard S. Alembik
(404) 373-0205                          Richard S. Alembik
(404)795-8999 FAX                       Georgia State Bar No. 008770
general_mailbox@alembik.com             Attorney for Plaintiff
                                        WGM Partners LLC

-28-



STATE OF GEORGIA                                    COUNTY OF FULTON

## **VERIFICATION**

COMES NOW Edwin Jean-Pierre who states under penalty of perjury as

follows:

I am over the age of 18, *sui juris* and otherwise competent to testify in

court. I am the sole member and manager of the plaintiff in the above-styled

action. I declare under penalty of perjury that each fact or opinion set forth in

the foregoing **Complaint and Jury Trial Demand** filed in this action is true

and accurate — unless it is qualified as being "on information and belief," in

which case the fact or opinion is true to the best of my knowledge,

information, and belief formed after reasonable inquiry

I understand that any intentionally false statement that is made in this

document could represent an act of fraud, perjury, and/or false swearing, for

which I could be prosecuted civilly or criminally.

PLAINTIFF
WGM PARTNERS, LLC,

By: _____
    Edwin Jean-Pierre

Its: _Manager and Sole Member_____